# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| VICTOR B. SHEPHARD, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    16-cv-1106-TMP ) |
| CAROLYN W. COLVIN, | ) ) |
|     Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Victor B. Shephard's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq*. On October 6, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) This case was subsequently reassigned to the undersigned on March 13, 2017. For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

In June of 2009, Shephard applied for disability benefits under Title II and Title XVI of the Act, alleging disability

---
[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

beginning on January 1, 2008. (R. at 219-20.) The Social Security Administration ("SSA") denied these claims initially. (R. at 70-71.) On January 15, 2013, Shephard reapplied for disability under Title II and Title XVI, alleging disability beginning on January 1, 2010, due to depression, special education, and an injured back. (R. at 190, 197, 271.) The SSA denied these applications initially and upon reconsideration. (R. at 94-95, 120-21.) At Shephard's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 17, 2014. (R. at 33-69.) On December 24, 2014, the ALJ issued a decision denying Shephard's request for benefits after finding that Shephard was not under a disability because he retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy. (R. at 8-32.) On March 21, 2016, the SSA's Appeals Council denied Shephard's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on May 18, 2016, Shephard filed the instant action. (ECF No. 1.) Shephard argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly weighed the medical source opinions and failed to explain the impact that Shephard's major depressive disorder had upon his RFC. (ECF No. 19.)

## II. CONCLUSIONS OF LAW

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision.  Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'"  Abbott v. Sullivan, 905 F.2d 918,

923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also

Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the

claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**C. ALJ's Step-Four Determination**

1. <u>Weight Given to Medical Source Opinions</u>

Shephard finds fault with the ALJ's treatment of nearly every medical source opinion in the record. He claims that these opinions do not support either the ALJ's conclusion that he could occasionally lift fifty pounds and frequently lift twenty-five pounds or the ALJ's treatment of his mental health limitations.

The first medical source opinion in the record to address Shephard's lifting abilities was Donita Keown, M.D. (R. at 350-52.) On August 10, 2009, Dr. Keown examined Shepard. The majority of the exam was unremarkable; however, Dr. Keown noted that Shephard's left shoulder hung lower than the right and had a limited range of motion. Additionally, Dr. Keown found no clear basis for Shephard's back pain. Based on the examination, Dr. Keown found that Shephard could sit, walk, or stand, for eight hours in an eight-hour work day, could occasionally lift twenty to twenty-five pounds, and could frequently lift ten to

fifteen pounds. Dr. Keown noted that the restrictions might be altered based upon the results of a pending x-ray of Shephard's left shoulder. (Id.) The ALJ gave most of this opinion significant weight, but gave little weight to the lifting restriction since the x-rays results showed "very minimal" degenerative spurring. (R. at 24, 353.) Dr. Keown examined Shephard a second time on February 11, 2013. (R. at 364-66.) This exam was also unremarkable, and Dr. Keown concluded that Shephard could sit, walk, or stand for six to eight hours in an eight-hour work day, occasionally lift thirty-five to forty pounds, and frequently lift fifteen to twenty pounds. (Id.) The ALJ again gave this opinion significant weight but gave little weight to the lifting restriction, finding that Dr. Keown had not reviewed the previously mentioned x-rays and that the normal results of the exam did not support the limitations on lifting. (R. at 24.)

Harold Ramsey, M.D., evaluated Shephard's medical records on April 1, 2013. (R. at 78-82.) Giving great weight to Dr. Keown's opinion, Dr. Ramsey determined that, among other postural and exertional limitations, Shephard could occasionally lift twenty pounds and frequently lift ten pounds. Ultimately, Dr. Ramsey concluded that Shephard was not disabled. (Id.) The ALJ gave this opinion little weight, finding it too restrictive. (R. at 24.)

Larry McNeil, M.D., evaluated Shephard's medical records on June 9, 2013. (R. at 102-07.) Dr. McNeil also gave great weight to Dr. Keown's opinion. However, Dr. McNeil determined that Shephard had far fewer postural and exertional limitations than Dr. Ramsey had opined. Furthermore, Dr. McNeil only limited Shephard to carrying fifty pounds occasionally and twenty-five pounds frequently. Dr. McNeil concluded that Shephard was not disabled. (Id.) The ALJ gave this opinion significant weight, finding that it was more comprehensive and well supported than Dr. Ramsey's. (R. at 24.)

The final medical source to opine on Shephard's lifting limitations was John Woods, M.D. (R. at 449-60.) Dr. Woods examined Shephard on October 29, 2014. The exam was primarily unremarkable; although, Dr. Woods did note that Shephard had moderately severe bilateral pes planus. (R. at 452.) Among other exertional and postural limitations, Dr. Woods found that Shephard could lift no more than twenty pounds but could do so frequently. (R. at 454-55.) He based his findings upon Shephard's lower back pain and bilateral pes planus. (R. at 457.) The ALJ gave this opinion little weight, finding that Dr. Woods's basis for his opinions did not support the severity of his specified limitations. (R. at 24.)

Regarding Shephard's mental limitations, Shephard finds fault with how the ALJ weighed the opinions of two medical

examiners: William Sewell, Ph. D., and David Pickering, Ph. D. Dr. Sewell examined Shephard on March 4, 2013. (R. at 368-74.) Dr. Sewell observed that Shephard was well groomed and spoke in a satisfactory fashion. (R. at 368.) Dr. Sewell then examined Shephard's mental status by administering a series of memory and abstract reasoning tests. As a result of this exam, Dr. Sewell determined that Shephard had average intelligence and, notwithstanding Shephard's dysthymic mood, did not exhibit sufficient symptoms to meet the criteria for a major mood or anxiety disorder. (R. at 370.) Dr. Sewell concluded that Shephard would have difficulty functioning in the abstract, but had no other work-related limitations. (R. at 370-72.) The ALJ found this opinion overly optimistic and gave it some weight. (R. at 24-25.)

Dr. Pickering examined Shephard on October 28, 2014. (R. at 475-87.) He observed that Shephard was well groomed and cooperative but was also anxious, inhibited, constricted, angry, and distant. (R. at 476.) Dr. Pickering indicated in his opinion that he administered a total of eight different tests to examine Shephard's mental status. From Shephard's results, Dr. Pickering determined that Shephard exhibited significant symptoms of major depressive disorder and generalized anxiety disorder. (R. at 479.) Dr. Pickering found it unlikely that Shephard's condition would improve significantly in the

foreseeable future. Dr. Pickering concluded that Shephard faced a plethora of moderate and marked limitations in his ability to interact with others, function independently, remember and understand instructions, sustain concentration and persistence, and adapt to changes. (R. at 480-84.) The ALJ gave this opinion little weight, noting that Dr. Pickering had not reviewed Shephard's medical records, Dr. Pickering did not report the specific mental status exam findings, part of the opinion was based on Shephard's subjective statements, and the opinion conflicted with Shephard's later testimony about his ability to socialize. (R. at 25.)

ALJs employ a "sliding scale of deference" for medical opinions depending upon each opinion's source. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Opinions from treating sources typically merit the most deference, followed by opinions from examining sources, and then from non-examining sources. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). However, in certain circumstances, an ALJ may assign more weight to the opinion of a non-examining source than an examining source. See Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 834 (6th Cir. 2016). One example of this is when the opinion of the non-examining source "is based upon a review of a complete case record." Id. (quoting SSR 96-6p, 1996 WL 374180, *3 (S.S.A. July 2, 1996)). In the event that a "non-

examining source did not review a complete case record, '[the Sixth Circuit] require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from the non-examining source." Id. (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)). When weighing medical source opinions, the ALJ must consider various factors, including the evidence upon which the sources' opinions are based and the opinions' consistency with the medical record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Shephard argues that all of the medical source opinions except Dr. McNeil's contradict the ALJ's RFC determination of how much weight Shephard could lift. However, as the ALJ pointed out, Dr. Keown's and Dr. Ramsey's lifting limitations were overly restrictive in light of the medical evidence. Hence, this part of their opinions merited less weight. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); 20 C.F.R. § 416.927(c)(4). The ALJ also properly gave Dr. Woods's opinion little weight given that Dr. Woods's own exam did not support the severity of the limitations contained in his opinion. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly

medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(3). Furthermore, the court can infer from the ALJ's constant reference to the dates of exams and strictly chronological order of analysis that the ALJ was aware that Dr. McNeil's non-examining source opinion pre-dated Dr. Woods's examining source opinion. See Gibbens v. Comm'r of Soc. Sec., 659 F. App'x 238, 248 (6th Cir. 2016). Thus the court finds that the ALJ properly weighed these opinions and, consequently, substantial evidence supported the lifting limitations that the ALJ assigned to Shephard.

Shephard objects to the weight that the ALJ gave to the sources who opined on his mental limitations, arguing that Dr. Sewell's report was less objective than Dr. Pickering's and that Dr. Pickering's failure to examine Shephard's medical record should not count against him given that Dr. Sewell also did not review the record. However, Dr. Pickering's opinion was less supported than Dr. Sewell's because Dr. Pickering did not describe how Shephard performed on the tests, noting only the results of the tests, whereas Dr. Sewell documented Shephard's performance. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Furthermore, it would have been unreasonable for the ALJ to criticize Dr. Sewell for failing to review Shephard's medical record because, when Dr. Sewell examined Shephard, Shephard's

medical history apparently contained no such evidence. Thus, the court finds that the ALJ correctly gave Dr. Pickering's opinion less weight than Dr. Sewell's.

2. <u>Explanation of Effects of Major Depressive Disorder</u>

Shephard argues that the ALJ failed to provide a basis for treating Shephard's major depressive disorder as severe at step two of the disability analysis but, nonetheless, giving it little import at step four. Shephard's medical records contain the following evidence concerning his mental health: medical source opinions; treatment notes from mental health care providers spanning July 16, 2013, to June 6, 2014; and Shephard's own description of his condition. The treatment notes show that Shephard experienced an improvement in his condition as a result of medication. (R. at 417, 421.) In his function reports and hearing testimony, Shephard portrayed his depression and anxiety as impacting his ability to perform basic chores and socialize. (R. at 52, 278, 297.) Yet, he also indicated that he performs a variety of household chores and meets with friends on a regular basis. (R at 45-48, 294-95.) Between the summary of the evidence section and the analysis section of her opinion, the ALJ listed each piece of evidence in the record relating to Shephard's mental health and described what weight she assigned to this evidence. (R. at 13-25.) While the ALJ concluded at step two that Shephard suffered from

severe mental health impairments in the form of major depressive disorder and borderline intellectual functioning, the ALJ found at step four that these impairments affected Shephard's RFC by restricting him to simple, routine tasks and only occasional contact with others. (R. at 20, 22.)

When an ALJ finds that a claimant has a severe mental impairment at step two of the analysis, it means that the claimant's impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015) (quoting Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007)); 20 C.F.R. §§ 404.1522, 416.922. An ALJ's RFC determination at step four is a determination of how these impairments "affect what [a claimant] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To make this determination, ALJs must consider all medical evidence in the record as well as the claimant's description of her or his symptoms. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In the opinion itself, ALJs must "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports [their] conclusions." Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. 2013) (citing SSR 96-8p, 1996 WL 374184 (S.S.A July, 2, 1996)). In this case, the ALJ considered all of the evidence on the record, and by assigning weight to the various

pieces of evidence, effectually described how the evidence supported her conclusion. Thus, the court finds that the ALJ properly assessed the effect that Shephard's major depressive disorder has upon his ability to function in the workplace.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Shephard is not disabled is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM<br>
United States Magistrate Judge

April 26, 2018